**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.                                        Case No.: 6:22-cv-820-WWB-DCI

SYNERGY SETTLEMENT SERVICES,
INC., FOUNDATION FOR THOSE
WITH SPECIAL NEEDS, INC.,
SPECIAL NEEDS LAW FIRM, PLLC,
JASON D. LAZARUS and ANTHONY F.
PRIETO, JR.,

                Defendants.
_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 23) and Motion to Strike (Doc. 25), and the Responses (Doc. Nos. 39, 40) and Replies (Doc. Nos. 43, 44) thereto.[1] For the reasons set forth below, both Motions will be denied.

## I.    BACKGROUND

Defendant Jason D. Lazarus, an attorney, owns and operates Defendant Special Needs Law Firm, PLLC ("**Law Firm**") and is the chief executive officer and largest shareholder of Defendant Synergy Settlement Services, Inc. ("**Synergy**"). (Doc. 4, ¶ 15). Synergy is a Florida corporation that offers structured financial products, primarily to individuals that have received funds through personal injury and legal proceedings. (*Id.*

---

[1] Defendants' filings fail to comply with this Court's January 13, 2021 Standing Order. In the interests of justice, the Court will consider the filings, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

¶¶ 12, 36). Defendant Anthony F. Prieto, Jr., a certified financial planner and investment advisor, is the president and minority owner of Synergy. (*Id.* ¶ 16).

Beginning in at least May 2015, Synergy started marketing and operating two pooled investment trusts, Settlement Solutions National Pooled Trust ("**Solutions Trust**") and Settlement Management National Pooled Trust ("**Management Trust**"). (*Id.* ¶¶ 3, 17–18). The Solutions Trust was established pursuant to 42 U.S.C. § 1396p, which allows Medicaid and Supplement Security Income recipients to maintain their eligibility for benefits by placing settlement funds in irrevocable trusts established and managed by a non-profit association. (*Id.* ¶¶ 2–3, 17, 22–23). Defendant Foundation for Those With Special Needs, Inc. ("**Foundation**"), which has been granted 501(c)(3) status by the Internal Revenue Service ("**IRS**"), is the named trustee of the trusts. (*Id.* ¶¶ 4, 17–18, 33, 35). Lazarus is the president and a director of the Foundation and Prieto is a director and former officer of the Foundation. (*Id.* ¶ 28). The Securities and Exchange Commission ("**SEC**"), alleges that although the Foundation is the nominal trustee of the trusts and is held out by Defendants as the trustee, in practice it is a shell company without any operations and Synergy actually performs the trustee function and benefits financially from the operation of the trusts. (*Id.* ¶¶ 45–55).

Synergy, Lazarus, and the Law Firm all distribute marketing materials regarding the Foundation and the trusts. (*Id.* ¶ 37). Additionally, the Law Firm is promoted to represent individuals in joining the trusts for a flat $1,500 fee. (*Id.* ¶ 38). Individuals pay an additional $500 or $550 joinder fee to join the trusts, a portion of which goes to the trusts' administrator, with the remainder allegedly going to Synergy. (*Id.* ¶ 41). Beneficiaries also have an annual trustee fee deducted directly from their account, which

is allegedly sent to Synergy. (*Id.*). Defendants represent to beneficiaries that the joinder and annual fees are instead paid to the Foundation. (*Id.* ¶ 52). The SEC also alleges that Defendants tell beneficiaries that any retained funds will be used to further the Foundation's mission of providing for personal injury victims with special needs, but in practice Defendants use much of the retained funds for unrelated purposes. (*Id.* ¶¶ 66–77).

As a result of Defendants' purportedly false statements regarding the roles of Synergy and the Foundation in administering the trusts and the use of retained funds as well as Synergy's alleged profit from the trusts, the SEC filed a ten count Amended Complaint against Defendants alleging violations of section 17(a)(1), (a)(2), and (a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(1)–(3); section 10(b) and rule 10b-5(a)–(c) of the Exchange Act, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5(a)–(c); sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c); and section 206 of the Advisers Act, 15 U.S.C. § 80b-6(1)–(2), (4). (*See generally id.*).

## II. MOTION TO STRIKE

Defendants argue that paragraphs 3, 5, 6, 9, 51, 53 through 59, and 71 through 77 of the Amended Complaint should be stricken. Pursuant to Federal Rule of Civil Procedure 12(f), the Court may, on motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored by the courts and "should be granted only if 'the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D.

357, 358 (M.D. Fla. 2012) (quoting *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995)).

Defendants' arguments can be categorized as follows: (1) some or all of the paragraphs should be stricken because the allegations are false and question the moral character of Defendants; (2) the allegations invade the exclusive jurisdiction of the SSA; and (3) the allegations invade the exclusive jurisdiction of the IRS.

First, Defendants ask the Court to strike paragraph five because "[n]othing could be further from the truth." (Doc. 25 at 2). Similarly, Defendants argue that paragraph fifty-one should be stricken because any advice Lazarus provided to the beneficiary was correct. (*Id*. at 5). However, "[i]n evaluating a motion to strike, the court must accept the facts alleged in a pleading as true, and [a] disputed question of fact cannot be decided on a motion to strike." *Mela Props., LLC v. Certain Underwriters at Lloyd's of London*, No. 2:18-cv-404-FtM, 2019 WL 423317, at *2 (M.D. Fla. Feb. 4, 2019) (quotation omitted); *see also Carlson Corp./Se. v. Sch. Bd. of Seminole Cnty.*, 778 F. Supp. 518, 519 (M.D. Fla. 1991) ("In evaluating a motion to strike, the court must treat all well pleaded facts as admitted, and cannot consider matters beyond the pleadings."). Although Defendants nominally argue that the statements are immaterial and scandalous, these arguments rely on evidence outside the Amended Complaint and ask this Court to weigh the merits of Plaintiff's factual allegations. Moreover, even assuming the statements were proven to be false, the Court does not find that Defendants have met their high burden in showing that striking is appropriate. *See Perry v. Schumacher Grp. of La.*, No. 2:13-cv-36-FtM, 2020 WL 3640536, at *3 (M.D. Fla. July 6, 2020) (holding that although "the allegations may reflect negatively on [the moving party], they are relevant to the factual background" of

the claim and, therefore, did "not require the 'drastic remedy' of being struck"); *State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC*, No. 6:19-cv-1837-Orl, 2020 WL 2630226, at *12 (M.D. Fla. May 22, 2020) (holding that allegations that implied improper business operations would not be stricken because they were related to the controversy and not scandalous); *Se. Distribs., Inc. v. United Specialty Ins. Co.*, No. 16-24549-CIV, 2017 WL 960300, at *7 (S.D. Fla. Mar. 13, 2017) (holding that allegations that provide relevant factual background and context, even if not necessary to prove a claim, are not sufficiently immaterial to warrant striking); *Envision Ins. Co. v. GrayRobinson, P.A.*, No. 8:13-CV-114-T, 2013 WL 12388598, at *3 (M.D. Fla. Aug. 8, 2013).

Next, Defendants argue that the challenged paragraphs should be stricken because the alleged conduct falls within the exclusive jurisdiction of the SSA or the IRS. However, a motion to strike is not a proper vehicle to raise substantive arguments regarding Plaintiff's standing or to otherwise seek the dismissal of Plaintiff's claims. *See C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1294 (M.D. Fla. 2021) ("The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. It is not intended to procure the dismissal of all or part of a complaint." (quotations and citation omitted)). Accordingly, Defendants' standing arguments are not the proper basis for relief under Rule 12(f) and will not be addressed with respect to the Motion to Strike.

III.     **MOTION TO DISMISS**

    A.     **Subject Matter Jurisdiction**

Defendants argue that the Court lacks jurisdiction over this case because: (1) interests in the trusts are not investment contracts, and (2) exclusive jurisdiction rests with the SSA or IRS. The SEC disagrees.

A party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 WL 276030, at *2 (M.D. Fla. Jan. 31, 2008).

The parties agree that for this Court to exercise jurisdiction over the claims in this litigation, the trusts must be "securities" within the meaning of the relevant statutes. To that end, the SEC argues that the trusts constitute investment contracts. In *Securities & Exchange Commission v. W.J. Howey Co.*, the Supreme Court established a three-part test for determining whether a particular financial interest constitutes an investment

contract and, thus, a security. 328 U.S. 293, 298–99 (1946). The three elements of an investment contract are: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *Sec. & Exch. Comm'n v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (quotation omitted); *see also Fedance v. Harris*, 1 F.4th 1278, 1288 (11th Cir. 2021). Defendants argue that none of the three elements are met in this case.

First, Defendants argue that because beneficiaries make an irrevocable transfer of funds into the trusts and can only use those assets under limited circumstances, the beneficiaries are not investing their money when it is placed into the trusts. For purposes of the *Howey* test, courts have defined "investment of money" as "a commitment of assets in such a manner as to subject oneself to financial loss." *Sec. & Exch. Comm'n v. Comcoa Ltd.*, 855 F. Supp. 1258, 1260 (S.D. Fla. 1994); *see also Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1348 (S.D. Fla. 2019) ("The 'investment of money' required for an 'investment contract' need not be made in cash and refers more generally to 'an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses.'" (quoting *Sec. & Exch. Comm'n v. Friendly*, 49 F. Supp. 2d 1363, 1368–69 (S.D. Fla. 1999)). In the Amended Complaint, the SEC alleges that beneficiaries with respect to both trusts transfer funds into irrevocable trusts to be pooled with other investor's funds for investment. (Doc. 4, ¶ 42). The SEC also alleges that Defendants specifically tell potential beneficiaries that they could get a better return as a result of the pooled nature of the trusts, but that the trusts do not "guarantee that the money will grow or be secure," and that their funds "may lose value." (*Id.* ¶ 43). The Amended Complaint further alleges that Synergy induced beneficiaries to join both trusts

"based in part on promised investment performance[.]" (*Id.* ¶ 54). At this juncture in the proceedings, the Court finds that this is sufficient to allege that beneficiaries in the trusts committed their assets to the trusts and, in doing so, bore the risk that those funds could be lost if not properly invested and managed by Defendants. Although the trusts are irrevocable, Defendants have not elaborated on why this would ameliorate any risk of loss that the beneficiaries might have in connection with placing their funds into one of the trusts. Thus, at the motion to dismiss stage, the Court finds that both trusts meet the first prong of the *Howey* test.

Next, Defendants argue that the trusts lack the requisite vertical commonality under the common enterprises prong because Defendants, as the promoters of the trusts, did not provide investment services. The Eleventh Circuit "ha[s] adopted the concept of vertical commonality, holding that a common enterprise exists where the fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties." *Sec. & Exch. Comm'n v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (quotation omitted). Defendants' argument reads the applicable standard too narrowly. Rather, "[i]f the investors' money is tied to the efforts and success of someone else—*whether it be the promoter or a third party*—vertical commonality is present in the scheme." *Sec. & Exch. Comm'n v. Kirkland*, 521 F. Supp. 2d 1281, 1292 (M.D. Fla. 2007) (emphasis added) (citing *Unique Fin. Concepts*, 196 F.3d at 1199–1200). "[T]he thrust of the common enterprise test is that the investors have no desire to perform the chores necessary for a return." *Unique Fin. Concepts*, 196 F.3d at 1200 (quoting *Eberhardt v. Waters*, 901 F.2d 1578, 1580–81 (11th Cir. 1990)). Defendants have not directed this Court to any authority for the proposition that the

Eleventh Circuit has amended its test for vertical commonality to limit it strictly to the efforts of promoters. Here, the SEC has alleged that the role of beneficiaries is limited to placing their funds into the trusts and selecting their desired level of risk, while the trusts are managed by some combination of Defendants and entities hired by Defendants to administer the trusts. (Doc. 4, ¶¶ 37, 39–40, 42).

Moreover, even if the definition was so limited, Defendants have not offered any legal authority for the proposition that vertical commonality requires the promoter to act as an investment advisor. Rather, it appears that the test only requires that the promised return is tied to the efforts and success of the promoter. The trusts at issue in this case are pooled asset trusts. This means that each beneficiary's assets are pooled for investment purposes, which decreases overall management costs and allows for higher potential returns on investment than any individual participant's funds would allow. Thus, the success of the investment in generating a return is, to some extent, dependent on the efforts of the promoters of the trusts in securing new members. (*See id.* ¶ 43). The SEC has alleged, and Defendants do not dispute, that they extensively market the trusts and actively recruit new beneficiaries to join the trusts. (*Id.* ¶ 37). Therefore, the Court also finds that the SEC has adequately alleged the existence of a common enterprise.

Finally, Defendants argue that the third prong is not met because the beneficiaries do not have any expectation of profit, and any investment income derived from the trusts is merely incidental to the purpose of the trusts. "To determine whether a transaction satisfies the 'expectation of profits' element, the Supreme Court has instructed [courts] to examine if an investor 'is attracted solely by the prospects of a return on his investment,' as opposed to when 'a purchaser is motivated by a desire to use or consume the item

purchased.'" *Fedance*, 1 F.4th at 1288 (quoting *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53 (1975)). In making this determination, courts "look at both the motivations of the purchasers and the promotional materials associated with the offer and sale at issue." *Id.* (citation omitted). "Courts 'examine the substance—the economic realities of the transaction—rather than the names that may have been employed by the parties.'" *Id.* (quoting *United Hous. Found.*, 421 U.S. at 851–52); *see also Teague v. Bakker*, 35 F.3d 978, 987 (4th Cir. 1994) ("[I]t must be shown (1) that the opportunity provided to offerees tended to induce purchases by emphasizing the possibility of profits, (2) that the profits are offered in the form of capital appreciation or participation in earnings within the meaning of *Howey* and *Forman*, and (3) that the profits offered would be garnered from the efforts of others.").

Turning first to the Management Trust, the SEC alleges that the Management Trust is a pooled trust for personal injury victims for the purpose of "provid[ing] a vehicle for investment management" to its beneficiaries. (Doc. 4, ¶ 18). Although the trustee may, at its discretion, place investor funds in a § 1396p trust, the Management Trust itself is not a § 1396p trust. (*Id.*). The SEC alleges that Defendants marketed both trusts as providing beneficiaries with better interest rates and investment management services. (*Id.* ¶¶ 43, 54). Defendants argue that the primary purpose of the Management Trust is to protect funds from minors and incompetents, rather than to increase the value of the funds. Defendants' argument, however, ignores the well-pleaded facts set forth in the Amended Complaint and fails to explain why beneficiaries would elect to place the funds in an irrevocable trust with strict distribution requirements when the purported goal beneficiaries in the Management Trust seek could be obtained from less restrictive

financial arrangements. Finally, courts have recognized that a profit motive need not be the sole motivation for entering into a transaction, as long as it is a motivation. *See Sec. & Exch. Comm'n v. Liu*, 754 F. App'x 505, 507 (9th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 1936 (2020); *cf. Reves v. Ernst & Young*, 494 U.S. 56, 66 (1990). In this case, the Court is satisfied that the SEC has adequately alleged that potential beneficiaries of the Management Trust were motivated by the prospect of growing the corpus of their funds for their use and management and that Defendants marketed the Management Trust accordingly. Thus, the Court finds that the existence of an expectation of profit has been properly alleged as to the Management Trust. *See Sec. & Exch. Comm'n v. Mut. Benefits Corp.*, 408 F.3d 737, 741–42 (11th Cir. 2005) (holding that "where the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under Rule 56 (quotation omitted)).

With respect to the Solutions Trust, the SEC alleges that the trust is marketed to potential beneficiaries as a § 1396p trust for the purpose of maintaining eligibility for public benefits. (*Id.* ¶¶ 3, 17, 37). Nevertheless, the SEC also alleges that Defendants' marketing materials tout the additional benefits of placing funds in the Solutions Trust, such as "high quality investment management services," "better interest rates," and higher return rates. (*Id.* ¶ 43). Defendants again argue that participants are motivated by maintaining eligibility for public benefits, not by profit. However, at this stage in the proceedings, although admittedly a close call, the Court finds it best to allow the SEC to proceed as the Solutions

Trust as well. Defendants will have an opportunity at the summary judgment stage to raise their argument on a complete record.

In the alternative, Defendants argue that the SEC lacks standing to bring the claims alleged in the Amended Complaint because the IRS has exclusive jurisdiction over the determination of non-profit status and the SSA has exclusive jurisdiction over § 1396p trusts.[2] As the SEC points out, Defendants' argument appears to misread the relief sought in the Amended Complaint. Defendants have not directed this Court to any decision of either the SSA or IRS that would have to be undone for the SEC to prevail on its claims. Rather, the provisions of the social security and tax laws cited by Defendants do not appear to conflict with any action the SEC is attempting to take in this case. As to the IRS, Defendants cite 26 U.S.C. § 7401, which grants the IRS exclusive jurisdiction over "civil action[s] for the collection or recovery of taxes, or any fine, penalty, or forfeiture," with respect to taxes. However, the SEC is not seeking to bring claims for the collection or recovery of taxes. Thus, the Court fails to see how § 7401 prevents the SEC from bringing this case. With respect to the SSA, Defendants cite 42 U.S.C. § 1382b(b)(1), which has to do with what the SSA will exclude from an individual applicant or recipient's resources for determining eligibility, and 42 U.S.C. § 901(b), which directs the SSA to administer the disability insurance program and the supplemental security income program. Defendants,

---

[2] In its Response to Defendants' Motion to Dismiss, the SEC incorporates the arguments set forth in its Response in opposition to the Motion to Strike. (Doc. 40 at 14). Similarly, in their Reply, Defendants direct the Court to their Reply in support of the Motion to Strike. (Doc. 43 at 4). In the interests of resolving the jurisdictional argument on the merits, the Court will consider the parties' arguments. However, the parties are cautioned that this Court will not be tasked with scouring multiple documents for arguments. As set forth in this Court's Local Rules, all arguments must be contained in a single document and within the applicable page limitations. *See* M.D. Fla. R. 3.01(a)–(b). In the future, the Court will summarily reject arguments "incorporated by reference" from other filings.

however, fail to explain how either of these statutes is relevant to the claims alleged in the Amended Complaint, or how they vest exclusive jurisdiction in the SSA. Nor does it appear that the claims alleged by the SEC interfere with the SSA's right or obligation to review and approve trust documents. Simply put, Defendants have offered a litany of statutes and regulations regarding what the IRS and SSA do and how that is relevant to this case but have failed to actually provide any argument that would support a finding that the claims in this case are barred or to state how the claims by the SEC "challenge the determinations" of either body. (Doc. 23 at 16).

To the extent Defendants attempt to argue the doctrines of primary jurisdiction and implied repeal, the Court declines to address these arguments. Defendants' argument as to primary jurisdiction is a single sentence with citation to one, non-binding case. As to implied repeal, Defendants raise the argument exclusively in a footnote. Accordingly, neither argument is properly before this Court. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Hill v. Allianz Life Ins. Co. of N. Am.*, No. 6:14-cv-950-Orl-41KRS, 2014 WL 12617784, at *3 (M.D. Fla. Dec. 5, 2014) ("[W]here an argument on the merits has been summarily raised in a footnote, the court may decline to address the argument." (quotation omitted)); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

## B. Failure to State a Claim

Defendants also argue that, for a number of reasons, all or most of the claims alleged in the Amended Complaint must be dismissed for failure to state a claim. "A pleading that states a claim for relief must contain . . . a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

First, Defendants argue that the SEC's treatment of pooled trust interests as securities violates their due process rights because the SEC has never taken this position before and it is not in line with no-action letters that the agency has issued in the past. However, as the SEC points out, the letters relied on by Defendants do not involve special needs trusts like those at issue in this case. Furthermore, Defendants have failed to cite a single case for the proposition that taking action inconsistent with prior no-action letters or agency guidance is a violation of the Due Process Clause. *See Sec. & Exch. Comm'n v. Almagarby*, 479 F. Supp. 3d 1266, 1273 (S.D. Fla. 2020) ("SEC no-action letters are

not binding pieces of legislation . . . [t]hey are not rulings of the Commission or its staff on questions of law or fact and are not dispositive of the legal issues raised as to the applicability of the federal securities laws to a given transaction." (quotations and citations omitted)).

With respect to Counts I through VI and VIII through XI, Defendants argue that the SEC has not pleaded the fraud allegations with the requisite specificity. Where a complaint alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* To meet this standard, "a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation omitted). In this regard, Defendants make a series of one sentence, perfunctory and conclusory arguments that consist of generalized statements followed by citation to cases with little to no explanation of the importance thereof. The SEC pleaded nearly thirteen pages of specific allegations regarding statements made by the various Defendants to potential beneficiaries regarding the trusts, which, in many instances, include the statement made, the person it was made by, and where and when it was made. (*See* Doc. 4, ¶¶ 45–77). The Court finds this sufficient under Rule 9(b). In all other respects, the Court declines to address Defendants' undeveloped arguments. *See U.S. Steel Corp.*, 495 F.3d at 1287 n.13.

Defendants also argue that the SEC failed to make any specific allegations of wrongdoing by the Foundation and the Law Firm. With respect to the Foundation, Defendants argue that the Amended Complaint fails to allege that the Foundation was responsible for any false statements or engaged in a scheme. Defendants' argument, again, consists of little more than conclusory statements and citation to the general rules of law without any analysis as to how that rule applies in this case or even which claims their specific arguments are intended to address. *See, e.g.*, *U.S. Sec. & Exch. Comm'n v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 795–97 (11th Cir. 2015) (noting that the standard set forth in *Janus* does not apply to claims under § 17(a) of the Securities Act). Similarly, with respect to the Law Firm, Defendants make the blanket argument that the Amended Complaint "says virtually nothing about the Law Firm," but fail to specify how the allegations that are made are insufficient to allege each of the six claims they seek to have dismissed. (Doc. 23 at 23). The Court declines to address such conclusory arguments.

With respect to Counts VIII through X, Defendants argue that the SEC has not alleged that Synergy, Lazarus, and Prieto are "investment advisers" as defined by the Advisers Act. As relevant, the Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities[.]" 15 U.S.C. § 80b-2(a)(11). Defendants argue that the SEC has not alleged that Synergy, Lazarus, and Prieto are "in the business of" advising others regarding securities. Yet again, this argument consists of a couple of sentences acknowledging that the Eleventh Circuit has set out multiple factors for courts

to consider in determining if individuals are "in the business," *see United States v. Elliott*, 62 F.3d 1304, 1310 (11th Cir. 1995), and then making the conclusory statement that they cannot meet one of those factors. Even assuming Defendants were correct—the Court is not convinced—the *Elliott* factors are explicitly "disjunctive," meaning satisfying any of the factors is sufficient. *Id.* Here, Defendants failed to provide anything more than a conclusory argument that they do not meet one of the factors. This falls far short of meeting their burden on a motion to dismiss. *See Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1279 (S.D. Fla. 2020).

Defendants also argue that the SEC has not alleged that Lazarus and Prieto received compensation for their advice because the Amended Complaint alleges that these sums were paid to Synergy. However, the SEC explicitly alleges that Lazarus and Prieto "profit from the trusts' operations by collecting all fees and other funds stemming from operating the trusts[,]" and that they divert funds from the trustee fees to reimburse themselves and to make personal donations. (Doc. 4, ¶¶ 4, 7). Defendants have failed to address these allegations or explain why they are insufficient to show that Lazarus and Prieto were compensated within the meaning of the Act.

Lastly, Defendants argue that, to the extent interests in the trusts are securities, they would be exempt from registration. As relevant, securities "issued by a person organized and operated exclusively for . . . charitable . . . purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any person, private stockholder, or individual . . . " is exempt from registration. 15 U.S.C. § 77c(a)(4). Defendants argue, in conclusory fashion, that because the Foundation has been determined to be tax exempt by the IRS, it is a charitable organization within the meaning

of the registration exemption. Defendants have not, however, offered any legal authority for the proposition that the Foundation's tax-exempt status necessarily renders it exempt under the Securities Act. *See Westminster Found., Inc.*, SEC Staff No-Action Letter, 1978 WL 12368, at \*3 (Mar. 9, 1978) ("The obtaining of an applicable and favorable Internal Revenue Service ruling is only one of the factors which is considered in determining the availability of the Section 3(a)(4) exemption from the registration requirements of the Act."); *see also Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 17–18 (1st Cir. 2013) (noting that tax-exempt status is only one of the requirements for exemption under the Securities Act). Thus, Defendants have not met their burden in establishing the exemption applies. *See Sec. & Exch. Comm'n v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953); *Sec. & Exch. Comm'n v. Am. Found. for Advanced Educ. of Ark.*, 222 F. Supp. 828, 830–31 (W.D. La. 1963) ("It is well established that any person who asserts the claim of an exemption from the Securities Act has the burden of proving its availability."). Therefore, Defendants' Motion to Dismiss will be denied.

## IV.    CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss (Doc. 23) and Motion to Strike (Doc. 25) are **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 24, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record