## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 6:22-cv-820-WWB-DCI |
| SYNERGY SETTLEMENT SERVICES, INC., FOUNDATION FOR THOSE WITH SPECIAL NEEDS, INC., SPECIAL NEEDS LAW FIRM PLLC; JASON D. LAZARUS, and ANTHONY F. PRIETO, JR., | |
| Defendants. | |

## PLAINTIFF'S MOTION
## TO AMEND FINAL JUDGMENT

## I. Introduction

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff Securities and Exchange Commission ("Commission") respectfully moves to amend the Final Judgment (Doc. 68) entered by the Clerk of the Court, pursuant to the Court's Order (Doc. 67) granting in part and denying in part the Commission's unopposed motion to enter a final judgment against defendants Synergy Settlement Services, Inc. ("Synergy"), Jason D. Lazarus ("Lazarus"), Anthony F. Prieto, Jr. ("Prieto"), and Foundation for Those With Special Needs, Inc. ("Foundation"). The Court denied, in part, the Commission's unopposed

motion for entry of final judgments ("Motion for Entry") (Doc. 65), stating that the permanent injunctive relief "does nothing more than require [Defendants] to follow the law." (Doc. 67 at 2).[1]

The Commission respectfully submits that the consented to injunctive relief detailed in the proposed final judgments (Doc. 65-5, 65-6, 65-7 and 65-8) complies with the requirements under *SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012), *Elend v. Basham,* 471 F.3d 1199, 1209 (11th Cir. 2006), and *Burton v. City of Belle Glade,* 178 F.3d 1175, 1201 (11th Cir. 1999), and are not "obey the law" injunctions.

Through its inadvertent omission, the Commission, in its Motion for Entry, did not set forth legal argument regarding the proposed injunctive language which refers both to the statutory language and also includes specific language detailing the conduct Defendants are prohibited from engaging in, thereby complying with *Goble* and Federal Rule of Civil Procedure 65(d)(1). The proposed injunctive language to which the Defendants agreed after extensive negotiation is specifically tailored to the allegations in the amended

---

[1] The Court granted the unopposed motion with respect to the monetary remedies the parties agreed upon in their settlement, specifically the imposition of disgorgement, prejudgment interest, and civil penalties as to defendants Synergy, Lazarus and Prieto (Doc. 67). Since the only proposed relief against defendant Foundation was injunctive relief, the Court dismissed Foundation with prejudice from the action. Synergy, Lazarus and Prieto have complied with the Court's Order and have paid the required disgorgement, prejudgment interest and civil penalties to the Commission in full.

complaint against Defendants Synergy, Foundation, Lazarus and Prieto, which form the basis for the violations alleged against them. Moreover, the proposed injunctive language specifically has put them on notice of the conduct which they are prohibited from engaging in in the future. The settlement is fair, adequate and reasonable. The Commission respectfully submits that its inadvertence may have led the Court to not recognize the *Goble* compliant language found in its proposals and thus warrants reconsideration given that the Commission's failure led this Court to commit clear (or manifest) error. Further, and in the alternative, a failure to enter the agreed upon injunctive relief per the expectations of the parties, which would prohibit the Defendants from engaging in the fraud they were alleged to have committed and would result in harsher consequences if they did again, would result in manifest injustice.

The Commission thus respectfully requests the Court, under its authority under Fed. R. Civ. P. 59(e), amend the final judgment consistent with the injunctive relief proposed (Doc. 65-5, 65-6, 65-7, 65-8) and respectfully requests the Court instruct the Clerk of Court to amend its Final Judgment (Doc. 68). In support, the Commission states the following:

## II. <u>Procedural History and Summary of Allegations</u>

On May 2, 2022, the Commission filed its complaint and then its amended complaint against Synergy, Foundation, Lazarus, Prieto, and Special

3

Needs Law Firm PLLC (the "Law Firm") (collectively "Defendants") (Doc. 1 and 4).  The amended complaint alleged the Defendants violated the antifraud provisions of the federal securities laws under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"); that Synergy, Lazarus, Prieto, and Foundation violated registration provisions of the Securities Act; and that Synergy, Lazarus and Prieto committed certain violations of the Investment Advisers Act of 1940 ("Advisers Act").  The amended complaint sought a permanent injunction as to the Defendants, disgorgement, and prejudgment interest as to Synergy, the Law Firm, Foundation and Lazarus, and civil monetary penalties against Synergy, the Law Firm, Lazarus, and Prieto.

As alleged in the Commission's amended complaint, from no later than May 2015, Synergy, a for-profit company, through Lazarus, its CEO, and Prieto, its President, amongst other services, marketed certain pooled special needs trusts which were securities, to personal injury lawyers whose clients received government assistance through Social Security Supplemental Security Income and/or Medicaid.  The prospective beneficiaries sought to maintain their financial eligibility for government assistance while also receiving personal injury awards.  Under federal law, the trustee of a pooled special needs trust must be a non-profit entity. The amended complaint further alleged that although Foundation, a tax-exempt non-profit entity was

created and approved by the IRS, it was Synergy, through Lazarus, the Law Firm, and Prieto, assisted by third-party administrators who managed these trusts. This placed the beneficiaries at risk of losing their government benefits. The amended complaint further alleged that (a) Synergy profited when beneficiaries joined the trusts and from earning trustee fees which Synergy diverted to itself from the third-party fund administrators; and (b) that at Synergy's direction, Foundation made charitable donations that were not exclusively for the non-profit's stated purpose.

On August 2, 2022, Defendants filed a motion to dismiss where their predominant argument was that the pooled trusts at issue were not securities (Doc. 23) and on August 5, 2022, Defendants filed a motion to strike (Doc. 25). On March 24, 2023, the Court denied Defendants' motions to dismiss and strike (Doc. 51).

After the Court denied Defendants' motions, the parties, through counsel, engaged in significant informal settlement discussions and, having previously noticed the Court of their selection of a mediator (Doc. 33), agreed to participate in early mediation of the case. The parties attended two in-person mediations in Tampa, Florida, with Bradford D. Kimbro of Holland & Knight, LLP on May 19, 2023, and August 21, 2023. Mr. Kimbro is a board certified business litigation attorney and a member of the National Academy of Distinguished Neutrals. He is a certified mediator and a certified public

accountant.  *See* https://www.hklaw.com/en/professionals/k/kimbro-bradford-d (last visited April 4, 2024).  Throughout this period, the parties engaged in frequent communications (often involving the mediator) and exchanged voluminous documents protected under Federal Rule of Evidence 408.

On October 30, 2023, Defendants Synergy, Foundation, Lazarus, and Prieto along with their counsel signed their respective consents to resolve this matter in its entirety (Doc. 65-1, 65-2, 65-3, 65-4), which included the imposition of permanent injunctive relief as to each; disgorgement and prejudgment interest as to Synergy; and a civil penalty as to Synergy, Lazarus, and Prieto.  The next day, on October 31, 2023, the Commission filed an unopposed motion for a stay of all deadlines based on Defendants' submitted proposals for settlement, informing the Court that the proposed settlements, if approved by the five-member Commission in Washington, D.C., would resolve all pending claims against defendants Synergy, Foundation, Prieto and Lazarus, and would result in dismissal of the defendant Law Firm (Doc. 61). The Court granted the stay (Doc. 62).[2]

---

[2] On January 2, 2024, the Commission moved unopposed for further stay of all deadlines for thirty days (Doc 63).  The Court deemed this motion moot upon the entry of its Order (Doc. 67).  On February 2, 2024, the Commission moved, unopposed for the entry of final judgments. (Doc. 65).

## III.  <u>Memorandum of Law</u>

### A. Applicable Standard and Authority for Amending the Final Judgment under Rule 59(e)

A Rule 59(e) motion permits a party to move to amend the final judgment within 28 days of its entry.  Fed. R. Civ. P. 59(e); *Banister v. Davis,* 140 S. Ct. 1698, 1708 (2020).  Rule 59(e) provides no specific grounds for relief and the decision to alter or amend the judgment is committed to the sound discretion of the district court.  *Am. Home. Assur. Co. v. Glenn Estess & Assocs., Inc.,* 763 F.2d 1237, 1238-39 (11th Cir. 1985).  "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion."  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *Levespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 174 (5th Cir. 1990).

Courts, nonetheless, have fashioned four basic grounds upon which a Rule 59(e) motion may be granted:

> First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Badger Auctioneers, Inc. v. Ali,* No. 6:16-cv-572-Orl-31TBS, 2018 WL 4194068, at *1 (M.D. Fla. Apr. 25, 2018) citing 11 Charles Alan Wright et al, Federal Practice and Procedure § 2819.1 (3d ed 2018).[3]

While newly discovered evidence and manifest errors of law or fact are the "only grounds" for granting relief under Rule 59(e), *Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007), the Court should be mindful that clear error or manifest injustice occurs where "the Court has patently misunderstood a party. . ." *Darby v. Carnival Corp.,* No. 19-21219-CIV, 2021 WL 5902866, at *3 (S.D. Fla. Dec. 13, 2021). Again, the Commission recognizes it did not address why its proposed final judgments satisfied *Goble* in its initial Motion For Entry, and provides the Court such guidance here.[4]

---

[3] Case law appears to vacillate between 'manifest' error and 'clear' error as being the applicable standard under Rule 59(e) for determining error of law or fact. *See e.g., Sussman v. Salem, Saxon, & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D. Fla. 1994) ("need to correct <u>clear error</u> or prevent manifest injustice"); *Turk v. Crytzer,* No. 8:18-CV-2490-CEH-TGW, 2021 WL 5506781, at *1 (M.D. Fla. Nov. 24, 2021) (acknowledging that the third prong of possibility for Rule 59(e) is "the need to correct <u>clear error</u> or manifest injustice" and also citing to Eleventh Circuit authority indicating that the "the only grounds for granting a Rule 59(e) motion are newly-discovered evidence or <u>manifest errors</u> of law or fact) (emphasis added in all).

[4] There is non-binding authority that would permit the Court to go outside of the specific factors. *See ICEE Distribs., Inc. v. J&J Snack Food Corp.,* 445 F.3d 841, 848 (5th Cir. 2006) (stating "these factors…are simply illustrative and not exhaustive"); *see e.g., Jingles v. Baca,* No. 322CV00252MMDCLB, 2022 WL 4344879, at *2 (D. Nev. Sept. 19, 2022) (granting plaintiff's motion to vacate dismissal of the case "for sufficient cause" despite finding that none of the four grounds typically cited for granting a Rule 59(e) motion existed). Further, in *Arthur,* its citation to authority was *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir. 1999), which concerned the sale of property in a Chapter 7 bankruptcy and the application of Bankruptcy Rule 9023, which incorporates Rule 59 by reference, and thus is inapposite. Moreover, where

Rule 59(e) motions are aimed at "*re* consideration, not initial consideration." *Venegas-Hernandez v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir. 2004) (emphasis in original) (citations omitted). "In this way, Rule 59(e) motions allow a court to correct its own errors and avoid unnecessary appellate procedures." *Id.* "In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Sussman,* 153 F.R.D. at 694 (citation omitted). The Commission respectfully submits that its motion herein provides the Court such reason and justification.

Further, manifest injustice arises from "rulings that upset settled expectations—expectations on which a party might reasonably place reliance." *Qwest Servs. Corp. v. FCC,* 509 F.3d 531, 540 (D.C. Cir. 2007). It is an exceptionally narrow concept in the context of a Rule 59(e) motion. *Roane v. Gonzalez,* 832 F.Supp.2d 61, 64 (D.D.C. 2011). Manifest injustice must entail more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law. *Slate v. Am.*

---

courts have inherent authority to reconsider their non-final orders, the standard for reconsideration is the same as a final order. *Darby,* 2021 WL 5902866, at *2. And for example, in a Rule 60(b) situation, a ground for reconsideration includes "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

*Broad. Cos., Inc.,* 12 F. Supp. 3d 30, 35–36 (D.D.C. 2013).  Given the parties'
expectations and agreement that the Court would enter the proposed
permanent injunctions, along with their compliance with *Goble* as described
below, failure to enter them would, even in light of its limited application under
Rule 59(e), result in manifest injustice.

### A. The Injunctive Relief Embodied in the Proposed Final Judgments Comply with Rule 65(d) and *Goble*

Federal Rule of Civil Procedure 65(d) provides that "[e]very order
granting an injunction . . . must: (A) state the reasons why it issued; (B) state
its terms specifically; and (C) describe in reasonable detail—and not by
referring to the complaint or other document—the act or acts sought to be
restrained or required." *See* Fed. R. Civ. P. 65(d).  "This specificity requirement
is necessary to protect those who are enjoined by informing them of what they
are called upon to do or to refrain from doing in order to comply with the
injunction or restraining order." *Burton,* 178 F.3d at 1200 (internal quotations
omitted).

The Eleventh Circuit has held that because some "obey-the-law"
injunctions lack specificity, they "deprive defendants of procedural safeguards
that would ordinarily accompany a future charge of a violation of the securities
laws." *Goble*, 682 F.3d at 949.  In *Goble*, the Court questioned whether an
injunction that merely repeats the language of Section 10(b) and Rule 10b-5 of

the Exchange Act would survive judicial scrutiny. *Id.* at 951. The court expressed concern that given the wide range of conduct covered by Section 10(b) and Rule 10b-5 of the Exchange Act, and the large amount of case law interpreting those provisions, simply reciting the language of the statute and rule in an injunction fails to provide the detail needed to "inform the defendant of precisely what conduct is forbidden." *Id*.

*Goble* acknowledged that an obey the law injunction based on a statutory provision that states specifically what is required to comply with it *could* satisfy Federal Rule of Civil Procedure 65(d)(1). Applying this principle, the Court indicated that an injunction against violations of Exchange Act Sections 15(c)(3) and 17(a) and Exchange Act Rules 15c3-3 and 17a-3 may be permissible because the rules "specifically describe the acts required of the person enjoined." *Id.* at 952. Thus, under *Goble*, "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language" is permissible "so long as it clearly lets the defendant know what he is ordered to do or not." *Id.* at 952.

Here, the Commission filed proposed final judgments which include permanent injunctions that track the language of Section 10(b) and Rule 10b-5 of the Exchange Act, Section 17(a) of the Securities Act, Sections 206(1), (2), and (4) and Rule 206(4)-8 of the Advisers Act, and, *also* and critically, pursuant to *Goble*, specifically detail the enjoined conduct. Incorporated at the end of

each subsection of the anti-fraud provisions alleged, the previously proposed

final judgments included the following descriptive language:

> [language that tracks the statute] . . . by, directly or
> indirectly (i) creating a false appearance or otherwise
> deceiving any person, or (ii) disseminating false or
> misleading documents, materials, or information or making,
> either orally or in writing, any false or misleading statement
> in any communication with any investor or prospective
> investor, about the use of investor proceeds and the risks
> involved in investing in a securities offering.[5]

(Doc. 65-5 at 2,3; 65-6 at 2,3; 65-7 at 2,3; 65-8 at 2,3).

Thus, in addition to tracking the requisite statutory language, the

injunctive language includes specific prohibitions which are directly tied to the

allegations in the amended complaint and properly put the Defendants on

notice of the conduct which is prohibited.[6]  Defendants were alleged to have

offered securities without fully disclosing the risk to the beneficiaries that their

government entitlements were at risk based on the structure of Synergy and

Foundation.  The amended complaint further alleged that Defendants misled

the beneficiaries as to the use of their funds with respect to the destination of

---

[5] Another indicia of the specificity is found in the permanent injunction
language for the Advisers Act where "pooled investment vehicles" are
referenced instead of "securities offerings" as found in the Section 17(a) and
Section 10(b) injunctions. ((Doc. 65-5 at 5; 65-7 at 5; 65-8 at 5).

[6] In each of the Defendants' consents, they agreed that they would not oppose the
enforcement of the proposed final judgments on the ground that they fail to comply
with Rule 65(d) of the Federal Rules of Civil Procedure.  (Doc. 65-1, ¶ 9; 65-2, ¶7; 65-
3, ¶9; 65-4, ¶9).

some of their charitable contributions.  The amended complaint further alleged that Synergy did not disclose its receipt of trustee fees to itself from third-party administrators.  The proposed final judgments are "within the scope of the Case that the SEC's [amended] complaint [made] against [the Defendants]" and "furthers the objectives upon which the [amended] complaint is based." *Acosta,* No. 21-1435 (SCC), 2021 WL 5631726, at *1 (D.P.R. Dec. 1, 2021)

These specific prohibitions of not creating false appearances, not deceiving persons, and not disseminating false and misleading materials about the use of investor funds or proceeds and the risks involved in investing—all tied to a securities offering—provide the detail needed to satisfy *Goble* and speak directly to the allegations to which Defendants have settled.  *See e.g., SEC v. Graham,* 823 F.3d 1357, 1362, n.2 (11th Cir. 2016) (noting that when the issue became ripe, the SEC would be permitted to seek injunctive relief that "would be specific and narrow enough that the parties would be afforded sufficient warning to conform their conduct"); *SEC v. Fernandez,* No. 6:19-cv-1843-RBD-LRH, 2021 WL 2910820, at *1-*2 (M.D. Fla. July 12, 2021), (modifying Magistrate Judge's recommendation for final judgment to include specific prohibitions, comparable to the proposed final judgments submitted by the Commission herein); *SEC v. Kreiger,* No. 9:23-cv-80398-RLR (S.D. Fla. Jun. 29, 2023) (denying Commission's original proposed final judgment as an "obey the law" injunction (Doc. 5), and thereafter entering final judgment with

specific language (Doc.15), comparable to the proposed final judgments submitted by the Commission herein); *SEC v. Natural Diamonds Invst. Co., et al,* No. 19-cv-80633-RLR (S.D. Fla. Oct. 18, 2023) (denying motion for entry of final judgment without prejudice, given, in part, that "it may fail to satisfy the specificity standard under [Rule] 59(e), (Doc. 341), and thereafter entering final judgment with specific language (Doc.  343) comparable to the proposed final judgments submitted by the Commission herein); *Acosta,* 2021 WL 5631726, at *2 (entering proposed injunction because, in addition to the parties agreeing to it and the Commission making the policy choice to include it as part of the resolution of the case, the proposed inunction "states its terms with sufficient specificity and describes in reasonable detail the acts restrained…"); *contra SEC v. Farha,* No. 8:12-cv-47-T-23MAP, 2018 WL 11354497 (M.D. Fla. May 1, 2018) (denying Commission's unopposed amended motion for reconsideration of the court's orders entering judgment against defendants but declining to order injunctive relief); *FTC v. Washington Data Res.*, No. 8:09-cv-2309-T-23-TBM, 2012 WL 2075827, at *5 (M.D. Fla. Jun. 8, 2012).

The proposed final judgments also include a permanent injunction against future violations of Section 5 of the Securities Act.  The language in the proposed judgments specifically tracks the statutory language of Section 5. This is permissible because, as recognized in *Goble*, the language "specifically describe[s] the acts required of the person enjoined" and it clearly lets the

Defendants know "what [they are] ordered to do or not." *Goble,* 682 F.3d at 952; *see also SEC v. North Am. Clearing, Inc.* 656 Fed. Appx. 969, 972 (11th Cir. 2016) (finding that injunctions which largely track the language of Exchange Act §§ 15(c)(3) and 17(a) and Rules 15c3-3 and 17a-3 thereunder "are not vague because the rules set forth specific compliance criteria.").

The Commissions' proposed permanent injunctions are <u>not</u> akin to that as found in *Elend,* 471 F.3d at 1210, where the plaintiff proposed that the injunction could read: "the Secret Service shall ensure there's no violation of the First Amendment." Nor are they akin to the proposal in *Burton,* 178 F.3d at 1201-02, where an injunction "prohibiting the City from discriminating [based on race] in future annexation decisions" in a Voting Rights Act case was deemed an "obey the law" injunction. The Commission's proposed (and assented to) permanent injunctions specifically prohibit the applicable Defendants from creating false appearance and from disseminating false or misleading materials and information by any means to investors or prospective investors, specifically tied to the use of their funds and the risks involved in investing in a securities offering.

As alleged, Defendants minimized the risk involved in investing the Pooled Trusts, as the set up placed the beneficiaries at risk of losing their government entitlements. Further, as alleged, the beneficiaries were not made aware of the elevated fees that were being diverted to Synergy. The

Commission's permanent injunction is tied to this alleged conduct and is not simply telling the defendants they cannot violate the federal securities laws in the future.

### B. Injunctive Relief is the touchstone of the Commission's remedies

"The civil enforcement mechanism for [Section 17(a) of the Securities Act and Section 10(b) of  Exchange Act] consists of both express and implied remedies.   One express remedy is a suit by the Commission for injunctive relief." *Aaron v. SEC*, 446 U.S. 680, 688 (1980).  Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act specifically provide that whenever it appears to the Commission that these respective federal securities laws have been or are about to be violated, it may bring an action to enjoin such acts, and that upon a proper showing, a permanent injunction (or other equitable relief) shall be granted. 15 U.S.C. §§ 77t(b) and 78u(d)(1). "In enacting 15 U.S.C. 77t, Congress specifically authorized an injunction to issue to prohibit the violation of the securities laws. This was no dramatic departure from previous doctrinal development."  *SEC v. Carriba Air, Inc.,* 681 F.2d 1318, 1322 (11th Cir. 1982).[7]

Indeed, "[a] federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been

---

[7] Of course, in *Goble,* the Court indicated that absent (and necessary) from *Carriba Air* was an analysis of whether the injunction was compliant with Rule 65(d).  *Goble,* 682 F.3d at 950.

committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *N.L.R.B. v. Express Pub. Co.,* 312 U.S. 426, 435  (1941).  And, because of its essentially remedial purposes, injunctive relief, properly granted and fashioned, is not a penalty. *SEC v. Stubos,* 634 F. Supp. 3d 174, 192 (S.D.N.Y. 2022).

Further, should an injunction be violated, this Court has civil contempt powers to enforce it.  Fed. R. Civ. P. 70(e).  *Thomas v. Blue Cross & Blue Shield Ass'n.,* 594 F.3d 823, 829 (11th Cir. 2010).  District Courts have inherent power to enforce compliance with their orders through civil contempt.  *Taser Int'l Inc. v. Phazzer Elec., Inc.,* No. 6:16-cv-366-Orl-40KRS, 2018 WL 8838771, at *2 (M.D. Fla. May 4, 2018); s*ee e.g., Matter of Miller,* 81 B.R. 669, 679 (M.D. Fla. 1988) (attorney who willfully and knowingly violated permanent injunction held in "serious contempt" of the Court's Order).  Neither a jury trial nor proof beyond a reasonable doubt is required in a civil contempt proceeding.  *SEC v. SkyWay Global, LLC,* 710 F.Supp.2d 1274, 1299 (M.D. Fla. 2010).

## C. Judicial deference to the parties' negotiated settlement agreement is appropriate particularly given the Defendants are on notice of the prohibited conduct

There is a "clear policy in favor of encouraging settlements...particularly in an area where voluntary compliance by the parties...will contribute significantly toward ultimate achievement of statutory goals." *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir. 1975).  A

17

district court reviewing a proposed consent decree should refrain from second guessing the executive branch. *United States v. Montrose Chem. Corp. of California.,* 50 F.3d 741, 746 (9th Cir. 1995). Judicial deference to negotiated settlements is particularly appropriate when a government agency charged with protecting the public interest "has pulled the laboring oar in constructing the proposed settlement." *Id* (citation omitted).

Generally, when reviewing a settlement, the standard to be applied is whether the settlement is "fair, adequate, and reasonable." *Walsh v. Great Atlantic & Pac. Tea Co.,* 726 F.2d 956, 965 (3d Cir. 1983); *see also Acosta,* No. 2021 WL 5631726, at *1 (stating that consent decrees are reviewed to ensure "that they are reasonable and both procedurally and substantively fair"). Where the consent decreed includes injunctive relief, the court must ensure that the proposed injunction would not do a disservice to the public interest. *SEC v. Citigroup Glob. Mkts.,* 752 F.3d 285, 296-97 (2d Cir. 2014).

Here, the parties began negotiations in earnest in late March 2023, which through informal discussions, two in-person mediations and other communications with their selected meditator, along with protected document exchanges resulted in signed Consents seven months later on October 30, 2023. (Doc. 65-1; 65-2, 65-3, 65-4). Each of the Consents acknowledged, *inter alia,* that the "Defendant hereby consents to the entry of the final Judgment in the form attached hereto." (*Id.,* ¶2). These proposed final judgments include the

specific prohibition beyond just tracking the statutory language of Section 17(a) of the Securities Act,  Section 10(b) of the Exchange Act, and Section 206 of the Advisers Act.  And Defendants were clearly aware of the conduct that the Commission alleged to have violated the federal securities law as evidenced by their detailed motions to strike and dismiss. (Doc. 23 and 25).  The product of this hard-fought litigation and negotiation were the signed Consents and the resulting agreed upon proposed final judgments.  The Defendants expected and assented to be enjoined.  Issuing such permanent injunctions would be both fair and not a disservice to the public interest.

## IV. <u>Conclusion</u>

The proposed final judgments against Synergy, Foundation, Lazarus, and Prieto are consistent with the proscriptions of *Goble* and Rule 65(d), are both reasonable and fair and the public interest would not be disserved by the entry of the proposed injunctive relief.  The Commission's proposed final judgments reflect the parties' arms-length negotiations with the assistance of a certified mediator and should be entered by this Court.

The Commission's inadvertence to point out these particularities to the Court in its Motion for Entry and the Court's subsequent ruling stemming therefrom, which may have led this Court to commit its clear (or manifest) error, warrants amending the final judgment under Rule 59(e).  Further, and in the alternative, failing to permanently enjoin the Defendants from

committing securities fraud tied to the industry they are still associated with, resulting in an absence of applicable and potential harsher consequences if they did violate the permanent injunction, would result in manifest injustice. The Commission thus respectfully requests the Court amend the final judgment by entering the previously proposed final judgments (Docs. 65-5-8).

WHEREFORE, the Commission respectfully requests that the Court amend the final judgment.

## CERTIFICATE OF CONFERRAL

On March 22, 2024, the undersigned had a telephone conversation with previous counsel of record, Vitaliy Katz, to preview the Commission's likely intention to file the instant motion. Mr. Katz informed that he would be leaving the law firm soon and thus would not be able to commit to the Defendants' position. Mr. Katz indicated however, that the Defendants' position would likely be that they would not take a position on the Commission's motion, and that he would confer with Mr. Bondi.

On the morning of April 4, 2024, the undersigned emailed Mr. Bondi, recapping the conversation with Mr. Katz, and indicating the Commission's intent to file the instant motion and requesting Defendants' position. Mr. Bondi indicated receipt of the email and further indicated he would respond with Defendants' position. On April 5, 2024, at 2:04 p.m., the undersigned

followed up via email with Mr. Bondi and another attorney at Mr. Bondi's office regarding Defendants' position.  Having not received a response, the undersigned followed up again at 4:52pm via email to Mr. Bondi and the other attorney at Mr. Bondi's office.

At the time of this filing, the undersigned has not received a response as to Defendants' position.  Although the Commission initially contacted defense counsel on March 22, 2024, in light of Local Rule 3.01(g)(3) requiring three days advance notice to contact the opposing party, and giving defense counsel the benefit of the doubt given Mr. Katz's situation and withdrawal, the Commission files this motion without the position of the Defendants, with the intent to follow up again with defense counsel on Monday, April 8, 2024, via email and telephone.   The Commission will, pursuant to the Local Rule, indicate Defendants' position or indicate that Defendants have not provided their position, by the close of business on April 8, 2024.

Dated: April 5, 2024                    Respectfully submitted,

By:     /s/*Russell Koonin*
        Russell Koonin – Lead Attorney
        Senior Trial Counsel
        Fla. Bar No. 474479
        Telephone: (305) 982-6390
        Email: kooninr@sec.gov

        **Securities and Exchange
        Commission**
        801 Brickell Avenue, Suite 1950
        Miami, Florida 33131
        Telephone: (305) 982-6300
        Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system which will provide notice

to all counsel of record.


/s/ *Russell Koonin*
Russell Koonin, Esq.


**SERVICE LIST**
Bradley J. Bondi, Esq.
Paul Hastings, LLP
2050 M Street NW
Washington, DC 20036
bradbondi@paulhastings.com

Paul Thanasides, Esq.
McIntyre Thanasides Bringgold Elliott
Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Boulevard, Suite 200
Tampa, FL 33602
Email: paul@mcintyrefirm.com

*Counsel for Defendants*